UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**RENEE M. B.**[1]

        **Plaintiff,**

v.                                 **Civil Action 3:25-cv-0004**
                                         **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Renee M. B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB"). This matter is before the Court for a ruling on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 7). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

        **I.**        **BACKGROUND**

Plaintiff protectively filed her DIB application on June 3, 2022, alleging that she became disabled July 1, 2021. After Plaintiff's application was denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held a telephonic hearing on June 11, 2024. Plaintiff, who was represented by counsel, and a vocational expert ("VE") both participated in that

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

hearing. On July 1, 2024, the ALJ issued an unfavorable determination which became final on November 6, 2024, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. She contends that the ALJ reversibly erred by failing to explain why her residual functional capacity ("RFC")[2] did not contain standing limits. (Pl.'s Statement of Errors 6, ECF No. 8.) Defendant correctly contends that Plaintiff's contention of error lacks merit. (Def.'s Mem. in Opp'n, 4–6, ECF No. 10.)

## II.    THE ALJ'S DECISION

On July 1, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17–32.) The ALJ initially determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026. (*Id.* at 19.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of July 1, 2021. (*Id.*) At step

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc diseases; seronegative rheumatoid arthritis; hepatitis-C infection; vasculitis; cirrhosis; osteoarthritis of the right fourth digit (s/p trigger finger release); major depressive disorder; and generalized anxiety disorder. (*Id*.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 20.) Before proceeding to step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) (lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently, standing and/or walking for 6 hours of an 8-hour workday, and sitting for up to 6 hours of an 8-hour workday), except that the claimant can only frequently stoop, kneel, crouch, crawl, climb ramps and/or stairs, and handle, finger, and feel with the right upper extremities. The claimant cannot climb ladders, ropes, or scaffolding, and must avoid work at unprotected heights or around dangerous moving machinery. The claimant is limited to only occasional changes in an otherwise routine work setting.

(*Id*. at 23.)

At step four, the ALJ, determined that Plaintiff would be able to perform her past relevant work, which was classified by the VE as a salad bar manager, deli cutter/slicer, and personal shopper. (*Id.* at 31, 59–60.) In light of this, the ALJ further determined that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 31–32.) Accordingly, he did not proceed to step five. (*Id.* at 31–32.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)

3

(cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Even though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### IV. ANALYSIS

As explained, Plaintiff contends that the ALJ erred by failing to explain why her RFC did not include standing limits even though she asserts that "standing is one of her most serious limitations." (Pl.'s Statement of Errors 6, ECF No. 8.) No medical sources, however, opined or found that Plaintiff had standing limits. Instead, Plaintiff points to photographs of her vasculitis,

4

her testimony, and her report about the impacts of her vasculitis. (*Id*. at 6–8.) In short, Plaintiff appears to challenge the ALJ's assessment of her subjective symptoms (*a.k.a.* the ALJ's credibility determination). That challenge is not well taken.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929(c)(1); SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources, including medical opinions. *Id.* In addition, there are seven factors set forth in SSR 16–3p[4] that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type,

---

[4] SSR 96-7p, 1996 WL 374186 (July 2, 1996) which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at * 11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all seven factors he should show that he considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. SSR 16–3p, 2017 WL 5180304 at *7–8. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

The ALJ will also consider whether a plaintiff sought medical treatment and followed prescribed care. SSR 16-3p, 2017 WL 5180304, at *9. Attempts to obtain or follow prescribed treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* at 9–10. But an ALJ may draw an adverse inference from a plaintiff's failure to seek or follow treatment only if he both considers and explains the plaintiff's possible reasons for that failure. *Id*. at 10; *Dooley v.*

6

*Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016) (noting that an ALJ must consider the claimant's reasons before inferring that a lack of treatment undermines the claim).

Here, the Court finds no reversible error in the ALJ's subjective symptom assessment. The ALJ began by summarizing Plaintiff's symptoms, writing, in relevant part, as follows:

> The claimant maintains that she is disabled due to multiple medical conditions, including hepatitis, vasculitis, arthritis, depression, and generalized anxiety disorder. Through an Adult Function Report dated June 29, 2022, the claimant noted difficulty bending, squatting, reaching, kneeling, climbing stairs, using her hands, standing and walking for prolonged periods, and lifting greater than 20 pounds of weight due to a combination of joint and muscle pain, swelling, and generalized weakness affecting her back and bilateral upper and lower extremities . . .
>
> At the hearing held on June 11, 2024, the claimant testified that she worked as a salad bar tender for a local grocery store from 2015-2019, before changing positions to personal shopper (during the COVID-19 pandemic). She then worked as a deli-clerk for the remainder of her employment for the same employer, and she reportedly was "on her feet" and occasionally lifted weight as heavy as 60 pounds in each of these positions. However, she stopped working in July of 2021 after receiving a diagnosis of vasculitis and rheumatoid arthritis, and she has not attempted to return to work since that time.
>
> The claimant also testified that she received injections for lower back pain . . . . With respect to current limitations, the claimant testified that she is only able to stand and/or walk for about 20 minutes and sit for a slightly longer time, but that she often changes positions and elevate her lower throughout the day to mitigate lower back pain and achiness and swelling in her lower extremities. She also reported difficulty lifting heavy weight and driving her (*sic*) secondary to flare-ups of vasculitis and numbness and tingling sensation primarily affecting her right hand (hearing transcript).

(R. at 24.)

The ALJ then determined that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the symptoms of the types alleged," Plaintiff's statements about the "intensity, persistence and limiting effects" of her symptoms were not consistent with the record evidence. (*Id*.) Specifically, the ALJ explained the "largely stable diagnostic studies and examinations" in the record, Plaintiff's "generally good response to

7

conservative care," and Plaintiff's "documented activities of daily living" failed to support Plaintiff's "allegations of 'disabling' symptoms and limitations, including an inability to sit, stand, or walk for more than 20 minutes . . ." (*Id*. at 31.) These were proper considerations. 2017 WL 5180304 at *7–8.

The ALJ's explanations are substantially supported by the record. First, the ALJ accurately described the "largely stable diagnostic studies and examinations" in the record, including those related to Plaintiff's standing and walking. For instance, the ALJ explained that examinations found that Plaintiff had normal gait and station (*id*. at 25 (citing R. at 442-44, 431-33, 550-52)); normal balance, gait, and stance (*id*. at 26 (citing R. at 980-85)); and normal gait and lower extremity strength (*id*. at 28 (citing R. at 1091)). The ALJ further explained that other examinations found that Plaintiff had normal muscle strength and tone in all extremities (*id*. at 28 (citing R. at 431-33, 550-52)); a good range of motion and intact sensorimotor function in her lower extremities (*id*. (citing R. at 1094-1098, 1113-1114); and 5/5 motor power in her lower extremities (*id*. at 29 (citing 1299-1303)). And as the ALJ pointed out, Plaintiff was able to walk on a treadmill for eight minutes to complete a stress test. (*Id*. at 27 (citing R. at 1046).)

In addition, the ALJ accurately took note of records reflecting Plaintiff's "generally good response to conservative care." The ALJ indicated that the records demonstrated that Plaintiff's "flare-up of vasculitis improved shortly after she was started on oral steroids and antiviral medications to address hepatitis-C." (*Id*. at 30.) And the ALJ discussed the records that led to that conclusion in detail. For example, the ALJ correctly indicated that Plaintiff told a provider that a prednisone burst "really helped" a rash over her lower extremities and that she was experiencing only intermittent leg pain. (*Id*. at 26 (citing R. at 980-85).) The ALJ also explained that other providers noted that Plaintiff had purple lesions over her lower legs consistent with

8

resolving vasculitis (*id*. at 26 (citing R. at 980-85); an improving rash consistent with vasculitis over her lower extremities (*id*. (citing R. at 986-92, 1010-1013, 1018)); and that Plaintiff's vasculitis continued to improve (*id*. at 27 (citing R. at 999-1005)). The ALJ also pointed out that conservative measures, including compression stockings and Voltaren gel for pain relief, were recommended for Plaintiff's systemic vasculitis. (*Id*. at 28 (citing R. at 1101).)

Finally, the ALJ accurately described Plaintiff's "documented activities of daily living." The ALJ explained that Plaintiff reported to her cardiologist that she had "high energy," she tried to remain active, and she was able to cook, clean, and grocery shop without any difficulties. (*Id*. at 27 (citing R. at 641-666).)

Plaintiff does not challenge any of the ALJ's record-based reasons for finding that her allegations of disabling symptoms were not entirely consistent with the record. Instead, she argues that her diagnosis of vasculitis confirms her disabling symptoms. (Pl.'s Statement of Errors 8–9, ECF No. 8.) But she cites no authority for the proposition that a diagnosis necessarily amounts to a limitation. Indeed, courts have made it clear that, "[n]ot every diagnosable impairment is necessarily disabling." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988) ("The mere diagnosis of [an impairment] . . . says nothing about the severity of the condition.")).

In addition, state agency physicians at both the initial and reconsideration levels found Plaintiff could perform light work with some limitations—an assessment the ALJ found persuasive. (R. at 68–80.) Light work includes the ability to stand or walk for up to six hours in an eight-hour workday. See SSR 83-10, 1983 WL 31251 at *5–6. Plaintiff does not dispute the ALJ's reliance on the reviewers' findings.

In short, the ALJ properly considered Plaintiff's stable examination findings, positive response to conservative treatment, and daily activities when assessing her subjective symptoms, including her allegations that her symptoms prevented her from standing. Accordingly, the ALJ did not reversibly err by failing to include specific standing limitations in Plaintiff's RFC.

## V. CONCLUSION

For all the foregoing reasons, the Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors (ECF No. 8) is **OVERRULED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE